No. 28380

**Katharine Steinberger vs. The District Court, In and For the Tenth Judicial District, State of Colorado, and the Honorable Matt J. Kikel, Judge, In and For the Tenth Judicial District, State of Colorado**

(596 P.2d 755)

Decided June 11, 1979. Rehearing denied July 16, 1979.

R. D. Jorgensen for petitioner.

J. E. Losavio, Jr., District Attorney, Amy S. Isaminger, Deputy, for respondents.

*En Banc.*

MR. JUSTICE CARRIGAN delivered the opinion of the Court.

This is an original proceeding in the nature of prohibition and mandamus brought pursuant to C.A.R. 21. Petitioner asks this court: (1) to set aside the respondent district court's order denying the petitioner's motion to dismiss official misconduct charges against her, (2) to compel the respondent court to vacate the guilty verdict and sentence, and (3) to dismiss all charges against the petitioner. We issued a rule to show cause and now make the rule absolute.

The petitioner and her supervisor, Adolph Beruman, were charged together with second degree official misconduct in violation of section 18-8-405, C.R.S. 1973 (1978 Repl. Vol. 8). During the course of the proceeding the trials of the two co-defendants were severed. On May 30, 1978, the respondent court, sitting without a jury, found the petitioner guilty.

After the petitioner was tried and convicted, but before she was sentenced, Beruman was tried by the respondent court and convicted of

second degree official misconduct. At his trial the prosecution called the petitioner as a witness. She claimed her privilege against self-incrimination and refused to testify. At the request of the prosecution, the respondent court granted the petitioner what the court designated as "use-derivative use"[1] immunity and ordered her to testify. She obeyed the court order.

The petitioner then filed a motion in the case against her, requesting that the respondent court vacate her guilty verdict and sentence, then dismiss all charges against her. Respondent court denied this motion.

The petitioner argues that pursuant to section 13-90-118 the respondent court's only authority was to grant "transactional" immunity. Thus, the petitioner asserts that regardless of what the court called the immunity granted, it was transactional immunity, and therefore the respondent court was precluded from sentencing the petitioner for the crime about which she had been compelled to testify. Furthermore, the petitioner argues that because she is immune from sentencing, there can be no final judgment pursuant to Crim. P. 32. Thus, she contends, the guilty verdict is void and all charges against her must be dismissed. In our view the law requires that we uphold the petitioner's position.

We first address the respondent court's contention that its order granting statutory immunity was unnecessary to compel the petitioner's testimony about the crime for which she had previously been found guilty since her privilege against self-incrimination ended with the guilty verdict. We do not agree.

 The protections provided by the privilege against self-incrimination guaranteed by the Fifth Amendment to the United States Constitution and Art. II, sec. 16 of the Colorado Constitution do not terminate upon a finding of guilt and before sentence has been imposed. *Mills v. United States,* 281 F.2d 736 (4th Cir. 1960); *United States v. Wolk,* 398 F. Supp. 405 (E.D. Penn. 1975); *Matter of Jaime T.,* 408 N.Y.S.2d 901 (N.Y.Co., Family Ct. 1978). This privilege protects one from being subjected to the risk of greater punishment by evidence furnished from his own lips. The privilege would be undermined substantially were we to hold that it disappears upon conviction, for the end purpose of conviction is punishment through the sentence. We cannot ignore the likelihood that such a witness-defendant's forced incriminating statements could influence the court to impose a harsher sentence than it might have imposed absent the involuntary testimony. This is especially true here where the compelled testimony was heard by the trial court responsible for sentencing. Moreover Colorado prosecutors are allowed to be heard before sentence is imposed, and may argue for a more severe sentence, or for

---

[1] There is no "use-derivative use" immunity in Colorado.

denial of probation, as a result of testimony compelled from the defendant after conviction. Crim. P. 32(b)(1). It follows that a defendant who has not yet been sentenced retains the privilege against self-incrimination. Therefore she may refuse to testify about any aspect of the subject matter giving rise to the guilty verdict which might influence the trial court's sentencing decision.

█ A grant of immunity as extensive as a witness' constitutional privilege against self-incrimination allows the state to compel testimony which might otherwise be unattainable. *See New Jersey v. Portash,* _____U.S. _____, 99 S.Ct. 1292, 59 L.Ed.2d 501, (1979). In *Wheeler v. District Court,* 184 Colo. 193, 519 P.2d 327 (1974), we recognized and defined the two types of constitutionally permissible statutory immunity — transactional and use-derivative use immunity:

"Transaction immunity may be simply described as that which precludes prosecution for any transaction or affair about which a witness testifies. Use immunity, by contrast, is a grant with limitations. Rather than barring a subsequent related prosecution, it acts only to suppress, in any such prosecution, the witness' testimony and evidence derived directly or indirectly from that testimony. Evidence obtained wholly independently of immunized testimony may serve as a basis for prosecuting the witness for activities and transactions including those covered in his own statements." 184 Colo. at 199, 519 P.2d at 331.

█ Colorado's immunity statute, section 13-90-118, C.R.S. 1973, after granting courts authority to compel a witness to testify, provides that:

". . . . no such witness may be prosecuted or *subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence,* nor may testimony so compelled be used as evidence in any criminal proceeding against him in any court, except a prosecution for perjury in the first degree or contempt committed while giving testimony or producing evidence under compulsion as provided in this section." (Emphasis added.)

It appears obvious from the language used by the General Assembly that any immunity granted pursuant to this statute, regardless of how the trial court labels it, is necessarily transactional immunity *People v. Lucero,* 196 Colo. 276, 584 P.2d 1208 (1978); *Wheeler v. District Court, supra.*

█ Concededly the petitioner would have been immune from indictment or trial if prior thereto she had been required to testify regarding the matters with which she was charged. *Wheeler v. District Court, supra.* The question here is whether her giving such testimony after indictment, trial and a guilty verdict immunized her from sentence. We hold that it does. Imposition of a sentence for the crime described by the petitioner's compelled testimony is clearly barred by the plain words of section 13-90-

118. To hold otherwise would constitute judicial deletion from the statute of the immunity shield it provides against "penalty or forfeiture" predicated on compelled testimony. *Accord, Matter of Jaime T.,* 408 N.Y.S.2d 901 (N.Y.Co., Family Ct. 1978); *People ex rel. Hunt v. Lane,* 132 App. Div. 406, 116 N.Y.S. 990 (1909) (dictum).

The respondent court argues that broad language in *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) and *Reina v. United States,* 364 U.S. 507, 81 S.Ct. 260, 5 L.Ed.2d 249 (1960), interpreting a federal immunity statute with the same language as Colorado's, supports its contention that section 13-90-118 did not bar imposition of sentence here. Both of those cases, however, presented a different issue: whether a defendant already serving a sentence for the transaction about which he was compelled to testify was entitled to a pardon eradicating the unserved portion of his sentence. The Supreme Court declined to require such a pardon. The fact that the defendants in *Katz* and *Reina* had been sentenced before their testimony was compelled clearly distinguishes those cases from this one.

█ A recital of the sentence is an essential part of a judgment of conviction. Crim. P. 32(c). As already discussed the respondent court, by operation of the immunity statute, has aborted the prosecution and precluded itself from imposing a sentence. Therefore no final judgment of conviction may be entered. *See Korematsu v. United States,* 319 U.S. 432, 63 S.Ct. 1124, 87 L.Ed. 1497 (1943); *Berman v. United States,* 302 U.S. 211, 58 S.Ct. 164, 82 L.Ed.204 (1937).

In a criminal case, only two alternative ultimate results are possible: a judgment of guilty, or a judgment of not guilty. Unfortunately, the alternative of leaving the guilty verdict stand without a sentence or judgment is not available to us. The prosecution cannot be left pending as an open case on the court's docket forever. Nor can the defendant's status be left hanging, "twisting in the wind" indefinitely with no final judgment. Therefore dismissal of the charges against the petitioner is required.

Accordingly the rule to show cause is made absolute.

MR. JUSTICE GROVES does not participate.