[No. 48972–6.  En Banc.  July 7, 1983.]

THE STATE OF WASHINGTON, *Petitioner,* v. PATRICK RUNIONS, *Respondent.*

*Michael G. Spencer, Prosecuting Attorney,* and *Gerald R. Fuller, Deputy,* for petitioner.

*John L. Farra,* for respondent.

DIMMICK, J.—Where a defendant is convicted, and while his appeal is pending, he is compelled to testify against a codefendant under a grant of immunity pursuant to CrR

6.14, what effect, if any, does that grant of immunity have on his conviction and sentence? We hold that the grant of immunity has no effect whatsoever on the conviction and sentence, but would bar a retrial.

Defendant Runions confessed to the crime of burglary. In his confession he implicated another person, Don Lundquist, as a coperpetrator. Both men were charged with second degree burglary but were tried separately. Runions was found guilty on stipulated facts and was thereafter sentenced. He then appealed his conviction questioning the legality of his arrest and confession.

While Runions' appeal was pending, Lundquist was tried. Lundquist had also confessed to the crime; however, his confession was suppressed. The prosecuting attorney determined that prosecution against Lundquist would be precluded without Runions' testimony. Runions refused to testify at Lundquist's trial invoking his privilege against self–incrimination and the prosecutor did not question Runions' right to invoke this privilege. The prosecuting attorney then moved for an order granting Runions immunity pursuant to CrR 6.14 and compelling him to testify at Lundquist's trial. The judge entered the order granting immunity in any future prosecution and trial.

The Court of Appeals held that the grant of immunity required that Runions' sentence be set aside as the State's power to punish him terminated upon entry of the order of immunity. *State v. Runions,* 32 Wn. App. 669, 649 P.2d 144 (1982). Both Runions and the State petitioned this court for review of that decision. Runions contends that the court's grant of immunity necessitates the reversal of his conviction as well as his sentence. The State's position is that the immunity did not affect Runions' conviction or sentence in any respect. Runions further challenged his conviction on additional grounds. We granted review only on the issue of the scope of immunity under CrR 6.14. RAP 13.7. We reverse the Court of Appeals and remand this matter to that court to consider Runions' other claims. *See Courtright Cattle Co. v. Dolsen Co.,* 94 Wn.2d 645, 659, 619

P.2d 344 (1980).

CrR 6.14 provides:

> In any case the court on motion of the prosecuting attorney, may order that a witness shall not be excused from giving testimony or producing any papers, documents or things, on the ground that his testimony may tend to incriminate or subject him to a penalty or forfeiture; but he shall not be prosecuted or subjected to criminal penalty or forfeiture for or on account of any transaction, matter, or fact concerning which he has been ordered to testify pursuant to this rule. He may nevertheless be prosecuted for failing to comply with the order to answer, or for perjury or the giving of false evidence.

The Court of Appeals interpreted the rule literally in holding that defendant's sentence could not stand because he would be subject to a "criminal penalty" concerning a matter about which he had testified. The vast weight of authority and reason, however, do not support that conclusion.

CrR 6.14 is based on a federal witness immunity statute, the Compulsory Testimony Act of 1893. For a complete history of CrR 6.14, see Judge Reed's well reasoned dissent in *State v. Runions, supra.* The wording of the rule is essentially identical to the key words of that former federal statute: no compelled witness "shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing, concerning which he may testify, or produce evidence . . ." Act of February 11, 1893, ch. 83, 27 Stat. 443 (repealed 1970). This language was widely adopted in other federal immunity statutes. It creates what is labeled as "transactional immunity." *See Kastigar v. United States,* 406 U.S. 441, 452, 32 L. Ed. 2d 212, 92 S. Ct. 1653 (1972). *See also State v. Carroll,* 83 Wn.2d 109, 515 P.2d 1299 (1973) (RCW 10.52.090, forerunner of and identical to CrR 6.14, recognized as creating "transactional immunity").

In 1970, Congress repealed the federal statutes and replaced them with a different formulation of the immunity rule. The present federal witness immunity statute, 18

U.S.C. § 6002, provides that

> no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury . . .

This formulation provides a narrower immunity than the original statute. Under this statute, the witness may be prosecuted but the State could use only the evidence obtained independently of the immunized testimony. This type of immunity has been labeled "use and derivative use" (or merely "use") immunity. *Kastigar v. United States, supra.*

The United States Supreme Court upheld the use immunity statutes as being constitutionally sufficient under the Fifth Amendment in *Kastigar v. United States, supra.* Use immunity is now adopted in most jurisdictions. *See* C. Whitebread, *Criminal Procedure* § 14.04 (1980). This state, however, under CrR 6.14 retains the broader transactional immunity.

The issue in the instant case, therefore, is whether transactional immunity as provided for in CrR 6.14 requires vacation of defendant's conviction and/or sentence.

Only one case has interpreted transactional immunity as broadly as the defendant suggests. *Frank v. United States,* 347 F.2d 486 (D.C. Cir. 1965). In *Frank,* the defendant had been compelled to testify before a grand jury about an offense for which he had already been convicted and sentenced. The court interpreted the transactional immunity statute in a literal manner concluding that the defendant's conviction must be set aside. The court focused on the defendant's pending appeal and reasoned that if his conviction were affirmed, the defendant would be "'subjected to * * * penalty' not only by the previous conviction but by the subsequent affirmance." *Frank,* at 491. Moreover, reasoned the court, any other construction of the immunity statute would lead to "potential abuse". The nature of any potential abuse, however, is not specified in the opinion.

*Frank* was expressly disapproved by the Supreme Court in *Katz v. United States,* 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967). In *Katz* the defendant was compelled to testify after his conviction and sentencing but while his appeal was pending. The Supreme Court stated:

> We find no merit in the petitioner's further suggestion that his indictment must be dismissed. After his conviction was affirmed by the Court of Appeals, he testified before a federal grand jury concerning the charges involved here. Because he was compelled to testify pursuant to a grant of immunity, 47 U. S. C. § 409(*l*) [the transactional immunity statute], it is clear that the fruit of his testimony cannot be used against him in any future trial. But the petitioner asks for more. He contends that his conviction must be vacated and the charges against him dismissed lest he be "subjected to [a] penalty . . . on account of [a] . . . matter . . . concerning which he [was] compelled . . . to testify. . . ." 47 U. S. C. § 409(*l*). *Frank* v. *United States,* 347 F. 2d 486. We disagree. . . . The statutory provision here involved was designed to provide such protection, [to supplant the Fifth Amendment privilege against self–incrimination] not to confer immunity from punishment pursuant to a *prior* prosecution and adjudication of guilt.

(Citations omitted.) *Katz,* at 349 n.3.

■ *Katz* is persuasive precedent in the instant case. Thus there is clear authority that transactional immunity does not require that the conviction and/or sentence of a defendant who testified after he had been convicted and sentenced be set aside.

The precise issue before us does not appear to have been raised in other state courts. The courts of two states have, however, vacated the convictions of defendants who were compelled to testify under a grant of transactional immunity after being convicted but before being sentenced. *Steinberger v. District Court,* 198 Colo. 59, 596 P.2d 755 (1979); *People v. Wilson,* 108 Misc. 2d 417, 437 N.Y.S.2d 839 (Allegany County Ct. 1981); *In re Jaime T.,* 96 Misc. 2d 173, 408 N.Y.S.2d 901 (N.Y. Fam. Ct. 1978). *But see People v. Sobotker,* 110 Misc. 2d 269, 441 N.Y.S.2d 957 (Nassau

County Ct. 1981). None of these cases involved testimony compelled after sentencing and while an appeal is pending, and thus they provide no direct support for vacating Runions' conviction or sentence in this case.

The language of CrR 6.14, based as it is upon a venerable federal statute and enacted in other states, has been subject to considerable scrutiny. It appears that only one court over all those years has construed that language in the way the Court of Appeals did or the way Runions suggests. That case, *Frank*, was specifically overruled by the Supreme Court in *Katz*. There is, therefore, no direct authority in any jurisdiction for applying transactional immunity to vacate defendant's conviction and/or sentence under our facts.

Sound policy reasons support our conclusion and are well stated by Judge Reed in his dissent below:

> Immunity statutes are an attempt to balance two fundamental precepts in American jurisprudence; the Fifth Amendment's guaranty that no person "shall be compelled in any criminal case to be a witness against himself," and the legitimate social purpose of the State's need for information and concomitant ability to compel its citizens to appear at official proceedings and give information. Witness immunity statutes are designed to accommodate these two interests.
>
> In the case before us, the State has already met its burden and proved beyond a reasonable doubt that defendant Runions committed a crime. He was thereafter sentenced. Subsequently, while his appeal was pending, he was granted immunity pursuant to CrR 6.14 for his testimony against an alleged accomplice. Because this testimony in no way led to his conviction or the sentence imposed, because the State has "played fairly," the immunity given to defendant Runions cannot be construed so broadly as to terminate this prior punishment to which his subsequent testimony in no way contributed. To interpret CrR 6.14 otherwise, or as the majority would have it, "all power of the State to punish terminates" (majority opinion, at 670), is to misconstrue the purpose of the immunity rule. Such a provision is not a reward for furnishing evidence to the State. Its function and utility

exist only so long as defendant's testimony might incriminate him or tend to subject him to additional penalties. The majority opinion ignores this causal connection or link between defendant's testimony and his punishment. . . .

. . .

A result of the majority's interpretation is to deprive the State of evidence which would otherwise be available. This is at best a disastrous result because disputes should be settled so far as they can by resort to the whole truth. Because defendant Runions' testimony cannot possibly tend to incriminate him for a crime for which he has already been tried, convicted and sentenced, and, because any punishment suffered by defendant was not suffered as a result of his subsequent testimony, then the only excuse for defendant's right to withhold "every man's evidence" ceases. It is then unnecessary, and even shocking, for the State to absolve defendant from previously incurred punishment as payment for testimony which defendant, as a citizen, is duty bound to reveal and for which any other citizen is merely compensated at the prevailing rate of $10 per day.

(Citations and footnotes omitted.) *State v. Runions, supra* at 678–80 (Reed, J., dissenting).

Runions is not entitled to have his conviction or sentence set aside. Accordingly, we reverse the Court of Appeals and remand this matter to that court for consideration of his other claims on appeal.

WILLIAMS, C.J., and ROSELLINI, STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, DORE, and PEARSON, JJ., concur.