**PEOPLE of the State of Colorado ex rel. James F. SMITH, (by substitution for Paul Q. Beacom) District Attorney, Plaintiff-Appellee,**

v.

**Daniel JORDAN, Defendant-Appellant.**

No. 82CA0448.

Colorado Court of Appeals, Div. III.

Sept. 27, 1984.

Paul Q. Beacom, James F. Smith, Dist. Attys., Gertrude Grant, Sp. Deputy Dist. Atty., Denver, for plaintiff-appellee.

Richard M. Borchers, Denver (on briefs), Bender, Marks & Melonakis, Chris Melonakis, Denver, for defendant-appellant.

TURSI, Judge.

Defendant, Dan Jordan, appeals a trial court order holding him in contempt for his refusal to testify despite its grant of immunity pursuant to § 6–1–111(1), C.R.S. (1983 Cum.Supp.). We affirm.

On June 5, 1981, under authority of the Colorado Consumer Protection Act, § 6–1–101, et seq., C.R.S., the People ex rel. Paul Q. Beacom as district attorney brought suit against various named defendants alleging that they were engaging in deceptive trade practices. Plaintiff sought injunctive relief, costs, restitution to aggrieved customers, and any further orders deemed necessary by the court.

On the same date, the trial court entered a temporary restraining order enjoining the defendants in that action from making false representations as to the quality of their appliances and warranty services. Trial commenced on March 2, 1982, to determine whether a permanent injunction should issue.

During the trial Jordan, an alleged officer and owner of one of the businesses named as a defendant, was called to testify by the district attorney. Jordan had been served with a subpoena to compel his attendance at the trial but refused to testify. He asserted his constitutional privilege against self-incrimination. As grounds for that refusal, he cited potential federal criminal charges that might arise from certain tax irregularities, as well as penalties and forfeitures under the Colorado Consumer Protection Act.

After argument, the trial court ruled that § 6–1–111(1) provides protection co-equal and co-extensive with that afforded by the Fifth Amendment and *Colo. Const.*, Art. II, § 18. The court ruled that Jordan was not entitled to greater protection than

is constitutionally required and ordered Jordan to testify. When he refused to do so, the court found him in contempt.

## I

Jordan contends that the trial court erred in ruling as a matter of law that the provisions of § 6–1–111(1) were sufficiently broad to provide the same protection as afforded by his constitutional privilege against self-incrimination. We disagree.

 The Fifth Amendment privilege against self-incrimination protects against any disclosures which the witness reasonably believes could be used against him in a criminal prosecution or could lead to other evidence that might also be used. *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). The Supreme Court has traditionally held, however, that it is constitutionally permissible for a state to compel a witness to testify by substituting a grant of immunity co-extensive with the protection afforded by the Fifth Amendment. *See Counselman v. Hitchcock*, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892); *People ex rel. MacFarlane v. Sari*, 196 Colo. 235, 585 P.2d 591 (1978). To be co-extensive, the grant of immunity must leave the witness and the state "in substantially the same position as if the witness had claimed the privilege in the absence of a state grant of immunity." *Murphy v. Waterfront Commission*, 378 U.S. 52, 79, 84 S.Ct. 1594, 1610, 12 L.Ed.2d 678 (1964); *People ex rel. MacFarlane v. Sari, supra.*

 For a statute to provide protection co-extensive with the constitutional privilege against self-incrimination, the statute must prohibit any use or derivative use of the compelled testimony in a subsequent criminal prosecution. As stated in *Kastigar v. United States, supra*, "immunity from use and derivative use is co-extensive with the scope of the privilege against self-incrimination, and therefore is sufficient to compel testimony over a claim of the privilege."

Section 6–1–111(1), C.R.S. (1983 Cum. Supp.) of the Colorado Consumer Protection Act provides:

> "Any testimony obtained by the attorney general or a district attorney pursuant to compulsory process under this article or any information derived directly or indirectly from such testimony shall not be admissible in evidence in any criminal prosecution against the person so compelled to testify. The provisions of this subsection (1) shall not be construed to prevent any law enforcement officer from independently producing or obtaining the same or similar facts, information, or evidence for use in any criminal prosecution."

The statute was amended to this form after the Colorado Supreme Court held that the grant of immunity under the 1973 version of the statute was not constitutionally sufficient because it contained no prohibition against derivative use of compelled testimony. *See People ex rel. MacFarlane v. Sari, supra.*

Jordan, however, argues § 6–1–111(1) does not afford him full derivative use immunity because the subsection does not prevent a law enforcement officer from *initiating* an investigation based on information received from the compelled testimony. We find this argument unpersuasive.

 A plain reading of the statute shows that, even if an investigation were to be initiated based on Jordan's compelled testimony, any evidence collected as a result thereof would be inadmissible in a criminal prosecution against Jordan because the evidence would have been derived either directly or indirectly from the immunized testimony. Use and derivative use immunity prohibits prosecutorial authorities from using the compelled testimony in any respect, and therefore, it operates to insure that the testimony shall not lead to the infliction of criminal penalties on the witness. *Kastigar v. United States, supra.*

## II

Jordan also contends that the immunity provided by § 6–1–111(1) is not sufficient to protect him from federal prosecution for apparent tax discrepancies. This contention is also without merit. A Colorado grant of immunity bars any federal or local use of the immunized testimony in a subsequent criminal proceeding. *See Murphy v. Waterfront Commission, supra; People v. Lucero,* 196 Colo. 276, 584 P.2d 1208 (1978).

Jordan further argues that he is privileged to remain silent because use of his testimony in the instant trial for alleged violations of the Colorado Consumer Protection Act would subject him to a possible injunction. An injunction, however, is a civil remedy, and the Fifth Amendment privilege against self-incrimination does not extend to noncriminal matters. *United States v. Apfelbaum,* 445 U.S. 115, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980).

In *People ex rel. Dunbar v. Gym of America, Inc.,* 177 Colo. 97, 493 P.2d 660 (1972) the Colorado Supreme Court stated, in regards to an earlier version of the Consumer Protection Act, that:

> "this statute is concerned with proscribing certain kinds of specific *future* conduct. As such, the statute provides sanctions of purely prospective effect .... This of course means that when the attorney general seeks an injunction he is not demanding that the defendant be punished with a penal sanction, but rather that the defendant be restrained from acting unlawfully in the future." (emphasis in original)

Thus, the possible imposition of an injunction in the instant case is not sufficient to justify Jordan's refusal to testify.

## III

Jordan's final contention is that § 6–1–112, C.R.S. (1983 Cum.Supp.), which provides for a penalty of up to $10,000 for violation of an injunction, is quasi-criminal in nature and that imposition of a penalty would be a derivative or possibly derivative use of his immunized testimony in the instant case.

It is not necessary for us to decide whether the penalty imposed by § 6–1–112 is civil or criminal in nature. Any penalty imposed under § 6–1–112 would be as a result of a *subsequent* violation of an injunction issued in this case and not as a result of any evidence that might be obtained by Jordan's immunized testimony. Jordan's privilege against self-incrimination grants him immunity only from the use in criminal prosecution of any evidence directly or indirectly derived from his testimony regarding his past actions with the business named as defendant in the trial court. Evidence of a violation of an injunction is wholly independent from the actions about which Jordan has been ordered to testify. Therefore, the offered grant of immunity under § 6–1–111(1) in this case was sufficient to protect fully Jordan's constitutional right against self-incrimination.

A grant of immunity as extensive as a witness' constitutional privilege against self-incrimination allows a state to compel testimony which might otherwise be unobtainable. *Steinberger v. District Court,* 198 Colo. 59, 596 P.2d 755 (1979). We hold that the trial court here was justified in finding Jordan in contempt for his refusal to testify under a grant of immunity. *People v. Lucero, supra;* C.R.C.P. 107.

The order of the trial court is affirmed.

KELLY and METZGER, JJ., concur.